## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TIMOTHY MATTHEW TOBITT,

    Applicant,

v.                                  Case No. 8:20-cv-1841-TPB-JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____/

## ORDER

Timothy Matthew Tobitt, a Florida prisoner, timely filed an application for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Upon consideration of the application, the memorandum in support (Doc. 2), the response in opposition (Doc. 8), and Tobitt's reply (Doc. 11), the Court denies the application.

## Background

A state court jury convicted Tobitt of one count of burglary of a dwelling with an assault or battery while armed with a firearm, one count of aggravated assault with a firearm, and one count of battery. (Doc. 8-2, Ex. 4.) The state trial court sentenced him to an overall term of 25 years in prison followed by five years of probation. (*Id*., Ex. 6.) The state appellate court *per curiam* affirmed the convictions and sentences. (*Id*., Ex. 10.) Tobitt's motion for

1

postconviction relief, filed under Florida Rule of Criminal Procedure 3.850, was denied. (*Id.*, Exs. 12, 14, 16.) The state appellate court *per curiam* affirmed the denial. (*Id.*, Ex. 20.)

## Facts[1]

Sebastion Comfort lived on a property in Auburndale, Florida. On the property were a home, a carport, a "shop" or garage behind the home, and several sheds. The property was enclosed by a chain-link fence. A wooden privacy fence also ran along one side. On the evening of May 22, 2014, Comfort was at the property with his friends Elizabeth Harp and Kimberly Renee Joiner. Harp's daughter had been dating Tobitt, but Harp was trying to prevent her from seeing Tobitt. Tobitt called Harp while she was at Comfort's property. They argued, and Tobitt threatened Harp. Harp let the others know that Tobitt might come to the property to look for Harp's daughter. According to Harp, her daughter had brought Tobitt to the property before. But Comfort had not met Tobitt and did not know of him.

When Comfort, Harp, and Joiner were in the shop, they heard the fence rattling. Comfort walked toward the front of the property and heard another noise behind him. Comfort turned around and Tobitt hit him on the side of the face. Comfort "flew through the air" and landed on his back. (Doc. 8-2, Ex. 3, p.

---

[1] The factual summary is based on the trial transcript and appellate briefs.

175.) Tobitt stood over him, demanding to know where Harp's daughter was. When Comfort said he did not know, Comfort heard the sound of a gun being cocked. Tobitt said he would kill Comfort if Comfort did not tell him.

When Joiner heard voices and "some confrontation going on," she walked toward the front of the property. (*Id.*, p. 218.) Joiner saw that Comfort was on the ground and Tobitt was hitting him. When Joiner yelled at Tobitt to stop, Tobitt approached her and asked where Harp's daughter was. Joiner responded that she did not know Harp's daughter. Tobitt pulled out a handgun and held it near Joiner's face. Tobitt told her not to lie and directed her to go stand by Comfort.

Harp came out of the shop area and saw Tobitt in the yard. Tobitt hit Harp. When she fell, she slid into a picnic table by the carport. Harp was flat on her back. Tobitt was on top of her, yelling and asking where her daughter was. Tobitt got off of Harp, and when she got up, she could see Comfort lying flat on the ground. As Comfort tried to get up, Tobitt hit him. Comfort again fell backwards and hit the ground. Harp got up and went inside the house, and Tobitt left. After he was arrested, Tobitt admitted in a recorded jail call that he went over the fence.

## Standards of Review

**The AEDPA**

The Antiterrorism and Effective Death Penalty Act governs this proceeding. *Carroll v. Sec'y, DOC*, 1354 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if an applicant is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the convictions and sentences and denial of postconviction relief without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

**Ineffective Assistance Of Counsel**

Tobitt alleges ineffective assistance of trial counsel. Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. But "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*.

Tobitt must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Tobitt must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem,

review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential.") (internal quotation and citation omitted). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## Discussion

**Ground One**

Tobitt contends that the State's evidence was insufficient to support the jury's finding that he possessed or used a firearm during the commission of count one (burglary of a dwelling with an assault or battery of Comfort) and count two (aggravated assault of Joiner). Tobitt alleges a violation of his federal due process rights. He asserts that the witnesses' testimony was insufficient because Comfort testified that he "thought" he heard the sound of a firearm being cocked and because while Joiner testified that she saw Tobitt

with a gun, she could not positively say that it was real, rather than "an imitation (replica/fake) firearm." (Doc. 1, p. 6.)

The state appellate court rejected Tobitt's claim without discussion when it *per curiam* affirmed the convictions and sentences. Whether the evidence was sufficient to support the jury's finding that Tobitt possessed or used a firearm is reviewed under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). This standard asks whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 319.

Comfort testified that as Tobitt stood over him, he heard what sounded like a gun. (Doc. 8-2, Ex. 3, p. 177.) Comfort testified that he knew what a gun being cocked sounded like, and that he knew he heard the gun. (*Id*., pp. 177, 187.) And Joiner testified that Tobitt had a handgun. (*Id*., p. 220.) While she could not testify to whether it was "real" or "fake," when asked how she knew it was a gun, Joiner replied, "Because it was in my face, right here in my face. . . . I mean, how would I not?" (*Id*., p. 225.)

Tobitt fails to show that, taking this evidence in the light most favorable to the State, no rational trier of fact could have found beyond a reasonable doubt that he possessed or used a firearm during the commission of the offenses. Having failed to show that the state appellate court's decision was contrary to or involved an unreasonable application of clearly established

8

federal law, or was based on an unreasonable factual determination, Tobitt is not entitled to relief on Ground One.

**Ground Two-A**

Tobitt argues that trial counsel was ineffective for failing to present an adequate motion for judgment of acquittal. Tobitt argues that counsel's argument was "vague and lacking in specificity" and that counsel "failed to detail" how the State's evidence was insufficient. (Doc. 2, p. 8.)

As relevant to Tobitt's case, burglary occurs when a person "[e]nter[s] a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter." § 810.02(1)(b)1., Fla. Stat. The crime intended to be committed "cannot be burglary or trespass." *Grant v. State*, 311 So.3d 156, 162 (Fla. 2d DCA 2020) (citing *In re Standard Jury Instructions in Crim. Cases—Rep. No. 2012-01*, 109 So.3d 721, 721 (Fla. 2013)).

Tobitt argues that because his sole intent was to see his girlfriend, counsel should have argued that the State's evidence was insufficient to show that he entered the property with the intent to commit an offense therein. Tobitt also contends that counsel should have argued that he justifiably assumed he had permission to enter because "he had been brought to the home previously and not expressly informed he was not welcome to return" and that

"the circumstances of his previous visit was an open invitation to return to see"

his girlfriend. (*Id.*, p. 10.)

The state court denied this claim:

In claim 1, the Defendant asserts that trial counsel was ineffective in failing to make a sufficient motion for judgment of acquittal.

As stated in *State v. Hawkins*, 790 So.2d 492 (Fla. 5th DCA 2001):

> "A motion for judgment of acquittal is designed to challenge the legal sufficiency of the evidence. If the State presents competent evidence to establish each element of the crime, a motion for judgment of acquittal should be denied. *State v. Williams*, 742 So.2d 509, 510 (Fla. 1st DCA 1999). The court should not grant a motion for judgment of acquittal unless the evidence, when viewed in a light most favorable to the State, fails to establish a prima facie case of guilt. *Dupree v. State*, 705 So.2d 90, 93 (Fla. 4th DCA 1998). In moving for a judgment of acquittal, a defendant admits not only the facts stated in the evidence, but also every reasonable conclusion favorable to the State that a jury might infer from the evidence. *Lynch v. State*, 293 So.2d 44, 45 (Fla. 1974)."

As the Defendant acknowledges in his Motion, trial counsel did move for a judgment of acquittal. Trial counsel argued that a burglary had not been established based on where the event had occurred and argued that the use of a firearm had not been established. The trial judge denied the motion.

The Defendant argues that the State failed to show that the Defendant's entry was without consent. However, the Court finds that the testimony as recited in Defendant's Motion established that a jury could infer that the Defendant's entry was without consent. As indicated by the Defendant, clearly Mr. Comfort had not invited the Defendant onto his premises and there was evidence presented that the Defendant had jumped over a fence to gain entry.

There was also sufficient evidence presented for a jury to infer that the Defendant intended to commit an offense within. The Defendant was clearly intent on finding his girlfriend one way or another when he jumped over the fence to gain entry to the premises while armed with a

gun. He immediately assaulted and battered Mr. Comfort after gaining entry.

The testimony at trial as recited in Defendant's Motion was sufficient to establish both an assault and battery of Mr. Comfort. As the Defendant indicates in his Motion, Mr. Comfort testified that the Defendant not only battered him but also threatened him. Based on the above claim 1 is DENIED.

(Doc. 8-2, Ex. 14, doc. p. 571.)

The state court's ruling was reasonable. Tobitt fails to show that counsel performed deficiently in not raising the proposed arguments, or a reasonable probability of a different outcome had counsel done so. As the state court addressed, a Florida trial court "should not grant a motion for judgment of acquittal unless the evidence, when viewed in a light most favorable to the State, fails to establish a prima facie case of guilt." *State v. Hawkins*, 790 So.2d 492, 495 (Fla. 5th DCA 2001).

The evidence, when viewed in the light most favorable to the State, showed that Tobitt did not have permission to enter the property and that he intended to commit an offense other than burglary or trespass. The State presented evidence that Tobitt had jumped the fence, and Comfort testified that he had never met Tobitt and because he did not know Tobitt, Tobitt "wouldn't be really welcome" at his house. (Doc. 8-2, Ex. 3, pp. 172-73, 277.) In addition, the State presented evidence that Tobitt hit Comfort and threatened him with a firearm when Comfort went toward the front of his property to investigate the sound of the fence rattling. (Doc. 8-2, Ex. 3, pp. 173-78.)

Therefore, the record supports the state court's conclusions that the evidence was sufficient to demonstrate that Tobitt did not have permission to enter the property and that he committed assault and battery on Comfort immediately upon entry.

Tobitt does not show that the state court unreasonably applied *Strickland* or that its decision was based on an unreasonable factual determination. Tobitt is not entitled to relief on Ground Two-A.

**Ground Two-B**

Tobitt contends that trial counsel was ineffective for not objecting to a misleading and confusing jury instruction. As addressed, the State's theory of burglary was that Tobitt entered the property without permission and with the intent to commit an offense therein. But a burglary can also occur when a person, "[n]otwithstanding a licensed or invited entry, remains in a dwelling, structure, or conveyance" under certain circumstances. § 810.02(1)(b)2., Fla. Stat.

Consistent with the State's theory, the jury instruction that set out the elements of burglary only addressed the theory Tobitt entered a structure with the intent to commit an offense therein. (Doc. 8-2, Ex. 3, p. 357.) However, the "remaining in" language appeared elsewhere in the instructions. The jury was instructed that if the evidence did not establish Tobitt's intent to commit an offense other than burglary or trespass, then Tobitt must be found not guilty

of burglary "[e]ven though an unlawful entering or remaining in a structure is proved." (*Id.*, p. 358.) The jury was also instructed that if they found Tobitt guilty of burglary, they "must also determine if the State has proved beyond a reasonable doubt whether the structure entered or remained in was a dwelling." (*Id.*, p. 359.)

Tobitt asserts that counsel was ineffective for not objecting to these portions of the instruction. He argues that the instruction "wrongly allowed a conviction based on an intent to commit an offense that was formed after entry." (Doc. 2, p. 14.) The state court denied Tobitt's claim:

> [B]ased on the facts in this case, it is apparent that the Defendant entered the premises without permission and immediately began battering and assaulting the occupants. There is no reason to believe the jury would have been confused or that the Defendant was prejudiced by the inclusion of the "remaining in" language. *See Roberson v. State*, 841 So.2d 490 (Fla. 4th DCA 2003) and *Collins v. State*, 839 So.2d 862 (Fla. 4th DCA 2003). Accordingly, claim 2 is DENIED.

(Doc. 8-2, Ex. 14, doc. p. 572.)

The state court did not unreasonably deny Tobitt's claim. To show that trial counsel rendered ineffective assistance by not objecting to a jury instruction, Tobitt must show "that the instruction was improper, that a reasonably competent attorney would have objected to the instruction, and the failure to object was prejudicial." *Daugherty v. Dugger*, 839 F.2d 1426, 1428 (11th Cir. 1988).

The "remaining in" language was irrelevant. But given the evidence that Tobitt entered the property without permission, the state court reasonably concluded that Tobitt did not demonstrate *Strickland* prejudice as a result of counsel's failure to object to the "remaining in" language. Tobitt does not show that the State court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Two-B.

**Ground Two-C**

Tobitt argues that trial counsel was ineffective for not impeaching Comfort with a prior inconsistent statement. At trial, Comfort testified that he did not see Tobitt with a firearm but heard the sound of a gun being cocked after Tobitt hit him. (Doc. 8-2, Ex. 3, pp. 177-78, 186-87.) Tobitt asserts that a police report contains Comfort's statements that "Tobitt pulled an unknown semi-automatic handgun from his back waistline and aimed the handgun at Mr. Comfort's face" and that "at some point Tobitt placed the handgun back in his waistline." (Doc. 2, p. 17.)

Tobitt contends that "on the surface it would seem that Mr. Comfort's statements at trial were less prejudicial; nevertheless, the critical factor to consider is why there is such variation in Mr. Comfort's testimony." (*Id.*); *see Pearce v. State*, 880 So.2d 561, 569 (Fla. 2004) ("The theory of admissibility is not that the prior statement is true and the in-court testimony is false, but that

14

because the witness has not told the truth in one of the statements, the jury

should disbelieve both statements.").

>   The state court denied Tobitt's claim:
>
>   In his Motion, the Defendant complains that at trial Mr. Comfort
>   testified that the Defendant "stuck his hand in my face and it pretty
>   much sounded like a gun," but that in a during [sic] pre-trial police
>   interviews Mr. Comfort indicated that the Defendant stood over him and
>   pulled out a semiautomatic pistol.
>
>   Defendant argues that trial counsel should have impeached Mr. Comfort
>   with the police reports. The Court fails to see how the Defendant's
>   proposed impeachment would have been to his benefit or would have
>   resulted in a different result of his trial. Accordingly, claim 3 is
>   DENIED.

(Doc. 8-2, Ex. 14, doc. p. 572.)

>   Tobitt fails to show entitlement to relief, even assuming that impeaching

Comfort with his prior inconsistent statement would have affected Comfort's

credibility. The testimony of the other witnesses supports the charge involving

Comfort (burglary of a dwelling with an assault or battery while armed with a

firearm) and is consistent with Comfort's testimony that Tobitt had a gun.

Joiner testified that Tobitt possessed a gun while at the property that night.

(Doc. 8-2, Ex. 3, pp. 220-21.) Joiner also saw Tobitt "beating on" Comfort when

Comfort was lying on the ground. (*Id.*, p. 219.) Harp testified that she heard "a

big . . . bam" sound after Comfort went to investigate the fence rattling and

that she observed Comfort lying on the ground. (*Id.*, pp. 196, 201-02.)

Tobitt does not show that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Two-C.

**Ground Two-D**

Tobitt asserts that trial counsel was ineffective for not filing a motion for a new trial based on the following arguments: the State did not prove that he lacked consent to enter the property in light of his prior visit to the property; the State did not establish the "curtilage requirement" for burglary;[2] the State did not prove that he had the intent to commit a crime other than burglary or trespass; inclusion of the "remaining in" language in the jury instruction was erroneous because it misled or confused the jury; Comfort was not credible; the State failed to prove Tobitt possessed a firearm; and the assault and battery were not supported by evidence of physical injury. (Doc. 1, pp. 15-16.)

The state court denied Tobitt's claim:

[T]he Defendant asserts that trial counsel was ineffective in failing to file a motion for new trial on the weight and sufficiency of the evidence. In this claim the Defendant essentially reiterates the arguments contained in his prior claims as grounds for a motion for new trial based on a weight of the evidence argument. However, the Defendant's own recitation of the testimony and facts presented at trial, with which the Court agrees, established the State proved each element of the charged

---

[2] The burglary statute defines a "structure" as "a building of any kind, either temporary or permanent, which has a roof over it, together with the curtilage thereof." § 810.011(1), Fla. Stat. Although the term "curtilage" is not defined by statute, the Florida Supreme Court has determined that "some form of an enclosure [is necessary] in order for the area surrounding a residence to be considered part of the 'curtilage' as referred to in the burglary statute." *State v. Hamilton*, 660 So.2d 1038, 1044 (Fla. 1995).

> offenses. The Defendant's claim is without merit. Accordingly, claim 4 is
> DENIED.

(Doc. 8-2, Ex. 14, doc. p. 572.)

Tobitt has not shown entitlement to relief. Whether a motion for new trial would have been granted is a matter of state law. Florida Rule of Criminal Procedure 3.600 sets out the bases upon which a state trial court may grant a new trial. Rule 3.600(a)(2) provides that a trial court shall grant a new trial if the verdict is "contrary to law or the weight of the evidence." A trial court has "broad discretion in deciding whether to grant a motion for a new trial." *Moore v. State*, 800 So.2d 747, 748 (Fla. 5th DCA 2001).

By finding Tobitt's claim "without merit," the state court determined that any state law motion for a new trial would have failed. This Court must defer to the state court's determination of this underlying state law question. *See Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that appellate counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))).

Tobitt has not shown that the state court unreasonably applied *Strickland* or based its decision on an unreasonable determination of fact. He

is not entitled to relief on Ground Two-D.

Accordingly, it is **ORDERED** that Tobitt's application (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Tobitt and to **CLOSE** this case.

It is further **ORDERED** that Tobitt is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). The district court or circuit court of appeals must first issue a certificate of appealability. To obtain a certificate of appealability, Tobitt must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Tobitt has not made the requisite showing. Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Tobitt must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 10th day of May, 2023.

_____
**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**